[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14737
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20288-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRAULIO MARTINEZ,
a.k.a. Simplicio,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 23, 2012)

Before CARNES, HULL and EDMONDSON, Circuit Judges.

PER CURIAM:

Defendant Braulio Martinez appeals his convictions for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1).  After review, we affirm.

## I.  BACKGROUND

Defendant Martinez's convictions stem from an investigation of a cocaine importation-and-distribution operation centered in Miami-Dade County, Florida. On April 19, 2011, a grand jury indicted Defendant Martinez on these two counts: (1) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and (2) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). The conspiracy count alleged that Martinez had conspired with Joaquin Adolfo Reigosa, Cesar Ernesto Gonzalez, and others who were "known and unknown to the Grand Jury."

Martinez pled not guilty.  However, Gonzalez and another co-conspirator, Jose Reigosa, pled guilty, cooperated with the government, and testified at Martinez's trial.

**A.    Trial Evidence**

2

Gonzalez testified that, in 2006, he began to sell cocaine with his uncle Joaquin Reigosa. One of their customers was Defendant Martinez. When the government asked how Gonzalez knew Martinez, Gonzalez responded, "I met him through my uncle, Jose Reigosa. I met him, I would say, around 2002–2003, that he was working with Jose and they would sell ounces of cocaine."

Defendant Martinez objected to this testimony as improper character evidence under Federal Rule of Evidence 404(b). Martinez also requested a curative instruction and moved for a mistrial. At sidebar, the government conceded the testimony did not involve acts that were part of the conspiracy in this indictment. The district court sustained Martinez's objection, denied his motion for a mistrial, and gave this curative instruction:

> The defendant is on trial for the matters that are listed in the indictment, and you're going to have a copy of that. This case doesn't relate to any other matters or any other transactions. So to the extent the witness testified about some other matters, you are advised strictly to disregard, do not consider, it's not a part of this case.

As to this conspiracy, Gonzalez then testified that (1) on November 20, 2009, he delivered 4 kilograms of cocaine to Defendant Martinez, and (2) from 2006 to 2009, he sold Martinez an average of 15 to 20 kilograms of cocaine per month.

Jose Reigosa testified that, in 2004, he began selling cocaine with his

3

brother Joaquin.  Jose stated that he had delivered "drugs" to Martinez.  According to Jose, Martinez had also purchased kilograms of cocaine from Joaquin.

## B.    Jury Deliberations and Verdict

After both parties rested, the district court instructed the jury.  As part of its charge, the court reinforced that (1) the jury's decision must be based on only the evidence presented at trial; (2) the jury "must follow the law as I explain it—even if you do not agree with the law"; and (3) the jury "must follow all of my instructions as a whole."  The court elaborated that the jury "must consider only the evidence that I have admitted in the case.  Evidence includes the testimony of witnesses and the exhibits admitted."  The court directed the jurors to discuss the case with one another and to try to reach a unanimous agreement.  The jurors' only interest was "to seek the truth from the evidence in the case."

During the jury deliberations that same day, courtroom personnel informed the district court that Juror No. 9 had left the jury room during deliberations and was visibly upset.  Courtroom personnel had advised Juror No. 9 to return to the deliberation room and told all the jurors that, if they had an inquiry, they should send it to the court in writing.

Later that day, the district court received from the jury two written communications, which the court read to both parties.  The first note, from the jury

4

foreperson, stated: "We have 1 juror who wants to give her verdict on counts 1 &

2 to the judge directly and not to the foreperson.  Is that possible?"  The second

note was from Juror No. 9 and stated, "Judge I'm sorry my opinion is I wasn't

there at this time if they are guilty or not."  The district court observed that the

meaning of the second note was unclear, but if Juror No. 9 was indicating that she

would have to have seen the underlying acts occur in-person to make a decision,

her position was unacceptable.  As to the first note, the district court reinstructed

the jury on its duty to deliberate and admonished that the jury's "only interest is to

seek the truth from the evidence in the case."

Shortly thereafter, the district court received another note from the

foreperson that stated, "A juror does not want to deliver a verdict because the juror

was not present when the alleged events took place.  How do we proceed?  Do we

need to call an alternate?"  With the agreement of both parties, the district court

summoned Juror No. 9 and spoke with her as follows:

> THE COURT: Have you decided that you should not deliver a verdict because you were not present when the events took place?
>
> JUROR: Judge, that's my opinion.
>
> THE COURT: I'm sorry?
>
> JUROR: I wasn't there at this time.  I don't know anything.  But that's why I say that.

5

THE COURT: So you believe that because you were not able to observe the things that people testified about in this case, that you would not be able to render a verdict; is that correct?

JUROR: I don't know, Judge. That's what I can—I can tell you anything, but I don't know.

THE COURT: No. Listen to my question, ma'am. What I'm asking is whether you feel that because you were not present to see the events that people testified about in this case, that that would prevent you from being able to render a verdict? Is that correct?

JUROR: Yes. Correct.

THE COURT: And that's what you were trying to tell me in your note when you said, "I'm sorry my opinion is I wasn't there at this time if they are guilty or not."

JUROR: Yes, I don't know if they're guilty or not.

THE COURT: Because you were not able to see it with your eyes; is that correct?

JUROR: Yes.

The district court stated that Juror No. 9's answers, together with her earlier note, indicated she was unable to honor the oath to deliberate. Accordingly, the court found good cause to excuse Juror Number 9. Although Defendant Martinez objected to an 11-person jury, the court determined that, pursuant to Federal Rule of Criminal Procedure 23(b)(3), good cause existed to dismiss Juror No. 9, and thus deliberations could proceed.

6

The jury found Martinez guilty on both counts.  The district court sentenced Martinez to 168 months' imprisonment.  Martinez now appeals.

## II.  DISCUSSION

### A.    Motion for a Mistrial

Defendant Martinez argues that the district court abused its discretion in denying his motion for a mistrial because Gonzalez's testimony about how he met Martinez was improper under Federal Rule of Evidence 404(b) and so prejudicial that it could not be cured by the district court's instruction.[1]  If the district court gives a curative instruction, reversal is appropriate only if the evidence "is so highly prejudicial as to be incurable" by the district court's instruction.  United States v. Garcia, 405 F.3d 1260, 1272 (11th Cir. 2005) (internal quotation mark omitted).  This Court presumes the jury follows the district court's instructions.  United States v. Mock, 523 F.3d 1299, 1303 (11th Cir. 2008).

Here, even assuming arguendo that Gonzalez's spontaneous and isolated reference to a 10-year-old drug deal was improper, any prejudice was cured by the district court's immediate and direct admonition that the jury disregard the reference.  See United States v. Funt, 896 F.2d 1288, 1295 n.5 (11th Cir. 1990)

---

[1]This Court reviews for abuse of discretion a district court's refusal to grant a mistrial. United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009).

7

(noting this Court has repeatedly affirmed a district court's denial of a motion for a mistrial where the improper testimony was "spontaneous and singular").  In its final charge, the district court reinforced that the jury should consider only the evidence admitted in the case.  Further, the admitted evidence amply supported Martinez's convictions, and Martinez has not demonstrated that the outcome of his trial would have been different absent Gonzalez's passing reference to a 10-year-old drug deal.  In light of these circumstances, the district court did not abuse its discretion in denying Martinez's motion for a mistrial.

**B.    Dismissal of Juror No. 9**

Defendant Martinez next argues that the district court abused its discretion in dismissing Juror No. 9 because no "just cause" existed for the juror's dismissal under Federal Rule of Criminal Procedure 23(b)(3).[2]  That Rule allows a district court to excuse a juror and to "permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse [the] juror."  Fed. R. Crim. P. 23(b)(3).[3]  "Good cause" to dismiss a juror exists when

[2]This Court reviews for abuse of discretion a district court's decision to remove a juror and to permit an 11-member jury to deliberate to a verdict.  United States v. Augustin, 661 F.3d 1105, 1129 (11th Cir. 2011).

[3]We reject Defendant Martinez's assertion that the district court applied the wrong standard because the court stated "good" cause existed, rather than "just" cause.  The district court correctly applied the post-2002 Amendments version of Rule 23.  See Fed. R. Crim. P. 23 advisory committee notes (2002 Amendments) (changing the language of Rule 23 from "just"

that juror refuses to apply the law or to follow the court's instructions. United States v. Augustin, 661 F.3d 1105, 1129 (11th Cir. 2011). A juror should be excused only if "no substantial possibility" exists that the juror is basing her decision on the sufficiency of the evidence.[4] Id.

Here, Juror No. 9 made clear—both in her note and in her responses to the district court's careful inquiry—that she was unable to reach a verdict because she did not personally observe Defendant Martinez commit the offenses. Juror No. 9 thus demonstrated her unwillingness to follow the district court's instructions that the jury must consider only the evidence presented at trial and to "seek the truth from the evidence in the case." Although Martinez argues the district court should have instructed Juror No. 9 individually, the district court's decision not to was well within its discretion. See Augustin, 661 F.3d at 1129 (noting district court's "broad discretion" to investigate juror misconduct, which discretion "extends even to the initial decision of whether to interrogate the jurors" (internal quotation marks omitted)).

Defendant Martinez also contends that the district court abused its

---

cause to "good" cause). In any event, no change in substance was intended by the amendment from "just" to "good" cause. Id.

[4]The district court's determination that "no substantial possibility" exists is a finding of fact that this Court reviews only for clear error. See Augustin, 661 F.3d at 1129.

9

discretion because it did not expressly state the words "no substantial possibility," but the district court's failure to recite certain words or phrases cannot be deemed an abuse of discretion.  See United States v. Abbell, 271 F.3d 1286, 1303 (11th Cir. 2001) (not requiring the district court to state specifically "no substantial possibility"), called into doubt on other grounds by Regalado Cuellar v. United States, 553 U.S. 550, 555 n.1, 128 S. Ct. 1994, 1998 n.1 (2008).  The record demonstrates no substantial possibility existed that Juror No. 9 based her decision on the sufficiency of the evidence.  Accordingly, the district court did not abuse its discretion by dismissing Juror No. 9 and proceeding with an 11-member jury.[5]

**AFFIRMED.**

---

[5]We note Martinez raises no issues on appeal as to his sentence.