**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4344
_____

UNITED STATES OF AMERICA

v.

JAMAAL YOUNG,
                    Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 1-07-cr-00042-006 )
District Judge: Honorable Anne E. Thompson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 24, 2013

Before:   McKEE, *Chief Judge*, SCIRICA, AND VANASKIE, *Circuit Judges*

(Filed: July 24, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Appellant Jamaal Young appeals his conviction following a jury trial of three

counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count

of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Young

1

contends that the evidence was insufficient to support his conviction. We reject this argument and will affirm the District Court's judgment.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

In or around 2001, Myron Punter, a native of the Virgin Islands, began selling crack and powdered cocaine in Alaska. Punter obtained the cocaine via express mail from Isaiah Fawkes, a childhood friend who was still residing in the Virgin Islands. Pursuant to their agreement, Fawkes mailed Punter between five and nine ounces of cocaine approximately once per week from 2001 to early 2003. The cocaine was packaged in small plastic bags, which were then hidden in the bottom of bottles of colon cleanser and shipped to Alaska in packages along with teas and dried fruits. In return, Punter sent Fawkes payments of approximately $5,000 to $9,000 via Western Union money wire transfers or money orders, typically within two to three days of receiving the drug packages.

Punter soon became concerned that he was "looking suspicious" by sending a high volume of wire transfers and money orders in his own name, and thus he began to recruit acquaintances in Alaska to send the money to Fawkes on his behalf. (Joint Appendix ["J.A."] 396.) Such acquaintances included Tonisha Wade, Leigh Bennett, and Lakia Lomack. In exchange for sending the funds, Punter paid Wade and the others in cash or drugs. Punter later became similarly concerned that sending payments to Fawkes would attract the authorities' attention. He therefore began to send payments to other

2

individuals in order to "lessen suspicion." (J.A. 392.) Punter chose where and to whom to send the funds based upon names provided to him by Fawkes. Jamaal Young – a childhood friend of Fawkes who, along with the other co-defendants, grew up in Frederiksted, St. Croix – was one of the individuals Fawkes instructed Punter to send money to in Fawkes' stead.

In total, Young received four wire transfers in St. Croix between December 8, 2001, and December 5, 2002, in the amounts of $3,500, $2,000, $10,000, and $7,000, from Punter, Bennett, Wade, and Lomack, respectively. During an interview with DEA Special Agent Michael Foran and IRS Special Agent Jackie Reynolds following his arrest in May, 2005, Young confirmed that it was his signature on the Western Union forms and checks described above, and he acknowledged that the funds were sent from Alaska. Young claimed not to know the identity of the senders, but explained that he was picking up the checks for a "friend," at the friend's request. Although Young did not identify the friend by name, he described the friend as someone he had "gr[own] up with" and known "all of his life." (J.A. 746.) Young informed the agents that this friend was present each time Young collected the money wire transfers, and that as soon as Young received the funds, he immediately turned them over to the friend.

On June 14, 2007, a grand jury returned an indictment charging Young and seven co-defendants with conspiracy to distribute cocaine, conspiracy to commit money laundering, and various substantive money laundering offenses. Young and six other co-

defendants proceeded to trial.[1]  The jury ultimately convicted Young of one count of

conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and three

counts of money laundering, in violation of 18 U.S.C § 1956(a)(1)(B)(i).[2]  The District

Court later sentenced Young to concurrent terms of twenty months' imprisonment, three

years of supervised release, and a special assessment of $400.  Young timely appealed,

challenging his conviction for the substantive money laundering offenses.[3]  He does not

appeal any portion of his sentence.

---

[1]  Five of Young's co-defendants' appeals were joined with this case.  *See United States v. Garcia*, No. 11-1999; *United States v. Maragh*, No. 11-2036; *United States v. Allick*, No. 11-4305; *United States v. Alfred*, No. 11-4343; and *United States v. Clouden*, No. 11-4522.  On January 15, 2013, a panel of this Court affirmed the judgment of conviction and sentence of co-defendant Fawkes.  *See United States v. Fawkes*, No. 11-4580, 2013 WL 150216 (3d Cir. Jan. 15, 2013).

[2]  Initially, the Government also charged Young with money laundering under a "promotion theory" pursuant section 1956(a)(1)(A)(i).  *See* 18 U.S.C. § 1956 (a)(1)(A)(i) (2013).  The Government later moved to strike the promotion language from all counts of the indictment.  The District Court granted the Government's motion, and thus the jury was presented with a redacted indictment which charged the defendants, including Young, under only a "concealment theory" pursuant to section 1956(a)(1)(B)(i). (*Compare* J.A. 96-97 (redacted indictment) (counts thirty-eight to forty), *with* Supplemental Appendix ["S.A."] 17-18 (original indictment) (same).)  Nonetheless, Young's judgment of conviction specifies section 1956(a)(1)(A) as the basis for the guilty verdict on counts thirty-eight to forty.  Because the redacted indictment only references section 1956(a)(1)(B)(i), and in light of the parties' silence as to this error in the judgment, we will assume the judgment's reference to section 1956(a)(1)(A) is merely a scrivener's error.

[3]  Young claims that the District Court "dismissed" his conviction for conspiracy to commit money laundering (count two) after the jury returned its verdict, and thus he presents no arguments on appeal concerning the propriety of his conspiracy conviction. (*See* Appellant's Br. 2.)  Young, however, provides no citation to the record to support his claim that count two was dismissed, and we cannot find any evidence in the District Court or appellate records showing that count two was ever dismissed with respect to Young, or that the District Court vacated Young's conviction on this count after the

II.

The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Young moved for a judgment of acquittal at the close of the Government's case, and the District Court denied the motion. When a defendant first challenges the sufficiency of the evidence in the district court, we exercise plenary review on appeal and must affirm the jury's verdict if "there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010) (citation omitted) (internal quotation marks omitted). Our review is "particularly deferential," as "[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citation omitted) (internal quotation marks omitted). Young therefore carries a "very heavy burden" on his sufficiency challenge. *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citation omitted) (internal quotation marks omitted).

To obtain a conviction for money laundering on a "concealment theory" pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), the Government has the burden of establishing beyond a

---

jury's verdict was returned. To the contrary, the District Court sentenced Young on the conspiracy count in the judgment of conviction entered December 13, 2011. Because Young presents no arguments on appeal concerning the merits of his conspiracy conviction, any such arguments are deemed waived. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) ("Under Fed. R. App. P. 28(a)(3), (5), the appellant is required to list the issues raised on appeal and present an argument in support of them . . . When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the Appellant has abandoned and waived that issue on appeal.").

reasonable doubt: "(1) an actual or attempted financial transaction; (2) involving the proceeds of [a] specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) . . . knowledge that the transaction [was] designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of [a] specified unlawful activity." *United States v. Richardson*, 658 F.3d 333, 337-38 (3d Cir. 2011) (alteration in original) (citation omitted) (internal quotation marks omitted).

Young's sufficiency challenge focuses on the third and fourth elements. Young contends that the Government failed to meet its burden of proving that he "knew the source of the funds, or whether or not the source of the money was illegal." (Appellant's Br. 10.) Young further argues that "[e]vidence of the collection of wire transfers without any proof of actual intent to conceal is simply insufficient" to prove that he "had the actual subjective intent to conceal the 'nature, location, source, ownership, or control' of the monies when he allegedly signed for [four] wire transfers for a friend." (Appellant's Br. 9.) According to Young, the Government failed to adduce sufficient direct *or* circumstantial evidence from which a reasonable jury could have concluded that these elements were proven beyond a reasonable doubt.[4]

---

[4] Young argues that the Government did not alternatively satisfy its burden of proof on the scienter requirements by proving that he was willfully blind to the source of the funds or "design" of the transactions. We need not reach this argument, however, because, as discussed *infra*, the Government adduced sufficient direct and circumstantial evidence from which a rational juror could conclude that both knowledge elements were proven beyond a reasonable doubt.

We disagree. Although the evidence against Young is, as the District Court observed, "much weaker" than that offered against certain of his co-defendants, (J.A. 869), we cannot say that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Eley v. Erickson*, 712 F.3d 837, 847 (3d Cir. 2013) (citation omitted) (internal quotation marks omitted). With respect to the third element, we have explained that although the Government must prove a defendant knew the funds in question were illegally obtained, it need not prove the defendant knew the exact specified unlawful activity from which the funds derived, "for the statute defines 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' as meaning that the person involved 'knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law . . . .'" *United States v. Wert-Ruiz*, 228 F.3d 250, 254 n.2 (3d Cir. 2000) (quoting 18 U.S.C. § 1956(c)(1)).

Here, the jury heard testimony that Fawkes and Punter ran a drug trafficking operation pursuant to which Fawkes sent Punter cocaine to sell in Alaska for a high retail value, and Punter remitted payment to Fawkes in St. Croix via wire transfer or money orders. The jury also heard evidence that Young and Fawkes were lifelong friends, and that Young picked up the wire transfers in question at the direction and in the presence of a friend he had known "all of his life." (J.A. 746.) The jury could have thus reasonably inferred that Fawkes was the "friend" for whom Young picked up the wire transfers, and that Young was aware of Fawkes' drug trafficking activity. The evidence further established that Young received $22,500 in wire transfers – $19,000 of which was

7

transferred in the span of just six weeks – from four individuals in Alaska whom he did not know. The jury heard testimony that Young immediately turned over these funds to his longtime "friend" who was present with him during each transaction. Moreover, the evidence demonstrated that Punter sent Young the funds at Fawkes' direction pursuant to their drug trafficking agreement. Viewing this direct and circumstantial evidence in the light most favorable to the Government, as we must in reviewing a sufficiency challenge, we hold that a rational juror could have concluded that Young knew the money wire transactions involved proceeds of some unlawful activity "constitut[ing] a felony under State, Federal, or foreign law . . . ." 18 U.S.C. § 1956(c)(1); *see United States v. Casper*, 956 F.2d 416, 422 (3d Cir. 1992) (recognizing that the government can prove its case by circumstantial evidence and observing that "[t]he fact that evidence is circumstantial does not mean it is less probative than direct evidence").

As to the fourth element, the evidence was likewise sufficient to allow the jury to conclude that Young knew the wire transactions were "designed . . . to conceal the nature, location, source, ownership, or control" of the funds. *Richardson*, 658 F.3d at 338. As the Supreme Court explained in *Cuellar v. United States*, 553 U.S. 550 (2008), "[i]n this context, 'design' means purpose or plan; *i.e.*, the intended aim of the [transactions]." *Id.* at 563. "The government need not prove that the defendant [himself] had the intent to conceal one of the listed attributes of the funds. It is enough to prove that the defendant knew someone else had that purpose." *Richardson*, 658 F.3d at 340.

At trial, the jury heard testimony that Fawkes provided Punter with the names of individuals in the Virgin Islands to whom payment for drugs should be sent – including

8

Young – in order to "lessen suspicion." (J.A. 392); *see Richardson*, 658 F.3d at 340 ("Evidence of a purpose to conceal can come in many forms, including . . . structuring the transaction in a way to avoid attention . . . .") (citation omitted) (internal quotation marks omitted). The evidence further established that Fawkes was a childhood friend of Young, and that Young collected the money wire transfers in question at the request of and in the presence of a friend he had known "all of his life." (J.A. 746.) These proven facts "logically support the inference" that it was Fawkes who asked Young to receive money on his behalf, and it was Fawkes to whom Young turned over the wire transfers totaling thousands of dollars each – sums consistent with those Punter testified he regularly sent Fawkes via surrogate senders and recipients. *Casper*, 956 F.2d at 422. Viewing this evidence in the light most favorable to the Government, we conclude that the evidence was sufficient to permit a reasonable jury to find that Young knew that the four money wire transactions in question were designed to conceal the true "nature, location, source, ownership, or control" of the funds. *Richardson*, 658 F.3d at 338.

III.

For the foregoing reasons, we will affirm the District Court's judgment.