**UNITED STATES of America, Plaintiff,**

v.

**15. Evaristo OROSCO, Defendant.**

**Criminal No. 07–cr–00275–EWN.**

United States District Court, D. Colorado.

July 17, 2008.

James R. Boma, U.S. Attorney's Office, Denver, CO, for Plaintiff.

**ORDER AND MEMORANDUM OF DECISION**

EDWARD W. NOTTINGHAM, Chief Judge.

This is a criminal case in which various defendants stand accused of conspiring to traffic drugs and launder money in violation of various federal statutes. This matter comes before the court on Defendant Evaristo Orosco's "Motion to Dismiss Count Four," filed June 6, 2008. The motion is joined by Defendants Martha and Cynthia Orosco, Ana Nemecia Orozco, Juvenal Ramirez–Birrueta, and Beatriz Munoz–Carrillo. Defendant Robert J. Clark seeks leave to file a motion to dismiss on the same legal grounds, but with different

factual analysis relating to his own specific alleged acts of money laundering.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to count four of the Government's superceding indictment, each of the instant movants stands accused of laundering the proceeds of illegal drug trafficking. (*See* Superseding Indictment at 5–7 [filed Dec. 19, 2007] [hereinafter "Superseding Indictment"].) Specifically, each movant is accused of violating title 18, sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) of the United State Code, which provide criminal penalties for anyone who:

> (a)(1) [ . . . ] knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or [ . . . ]
>
> (B) knowing that the transaction is designed in whole or in part-
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .

(*See* *id.*); *see also* 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) (2006). Each movant is also accused of conspiring to commit the above-proscribed acts in violation of 18 U.S.C. § 1956(h). (*See* Superseding Indictment at 5–7.)

On June 2, 2008, the Supreme Court decided *United States v. Santos,* —— U.S. ——, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), holding that the term "proceeds" in the federal money laundering statute referred to "profits," not "receipts," when the underlying specified unlawful activity ("SUA") was running an illegal gambling operation. On June 6, 2008, Defendant Evaristo Orosco moved to dismiss count four of the superseding indictment against him on the grounds that: (1) *Santos* applies to the SUA of illegal drug trafficking; and (2) the indictment has not alleged, nor has the Government shown adequate indicia of proof suggesting, that the money he is accused of laundering constituted drug trafficking "profits" rather than "receipts." (*See* Mot. to Dismiss Count Four [filed June 6, 2008] [hereinafter "E. Orosco Br."].) On June 27, 2008, the Government responded. (*See* Gov't's Resp. in Opp'n to Def.'s Mot. to Dismiss Count Four [filed June 27, 2008] [hereinafter "Gov't's Resp."].)

I have previously granted Defendants Martha Orosco's, Cynthia Orosco's, Ana Nemecia Orozco's, and Juvenal Ramirez–Birrueta's motions to join Defendant Evaristo Orosco's motion to dismiss, and I hereby grant Defendant Beatriz Munoz–Carrillo's motion to join as well. (*See* Minute Order [filed June 9, 2008]; Minute Order [filed June 10, 2008]; Minute Order [filed June 10, 2008]; Minute Order [filed June 17, 2008]; Defendant Carrillo's Mot. to Join in Co–Def. Evaristo Orosco's Mot. to Dismiss [filed June 24, 2008].) On June 27, 2008, Defendant Robert J. Clark moved for leave to file a separate motion to dismiss count four against him on *Santos* grounds, asserting that "the fact pattern surrounding [his] alleged involvement in the money laundering scheme differs from that of Mr. Orozco [sic] and, therefore, filing of a separate motion here is the most appropriate." (Mot. for Leave to File Mot. to Dismiss Count Four [filed June 27, 2008].) For reasons made manifest below, I find any factual differences between Defendant Robert J. Clark's alleged crimes and those of the other instant movants irrelevant to the propriety of his proposed motion to dismiss on *Santos*

grounds, and hence deny his motion as moot.

## ANALYSIS

Defendant Evaristo Orosco moves to dismiss count four of the superseding indictment against him on the grounds that: (1) *Santos* held the term "proceeds" in the federal money laundering statute to mean "profits" rather than "receipts;" and (2) the Government has not adequately alleged he laundered the profits of illegal drug trafficking in its indictment, nor shown any indicia of proof thereof. (*See* E. Orosco Br. at 2–3.) The Government responds that: (1) *Santos* provided a circumscribed reading of the term "proceeds" in the money laundering statute only when the underlying SUA is running an illegal gambling operation; (2) *Santos* left Tenth Circuit law undisturbed regarding the meaning of "proceeds" in the money laundering statute when the underlying SUA is some act other than running an illegal gambling operation; and (3) Tenth Circuit law interprets "proceeds" to include "receipts" when the SUA is illegal drug trafficking. (*See* Gov't's Resp. at 4–8.) Alternatively, the Government maintains that it can prove Defendant Evaristo Orosco laundered the profits of illegal drug trafficking and asks that I instruct the jury as to the proper meaning of the term "proceeds" should I—or the Tenth Circuit before trial—decide that "proceeds" means "profits." (*Id.* at 8.) For the following reasons, I agree with the Government's interpretation of *Santos,* but decline to instantly hold whether "proceeds" means "profits" and/or "receipts" under Tenth Circuit law.

In *Santos,* the Supreme Court affirmed a district court's order vacating two defendants' convictions for money laundering under 18 U.S.C. sections 1956(a)(1)(A)(i) and 1956(h). *See* —— U.S. ——, 128 S.Ct. 2020, 170 L.Ed.2d 912. These convictions

were based upon the defendants' payment and/or receipt of monies to runners, debt collectors, and gamblers in an illegal lottery run by Santos. *Id.* at 2022–23. The district court reversed the money laundering convictions on the grounds that the federal money laundering statute's prohibition of transactions involving criminal "proceeds" applied only to criminal profits, not receipts. *Id.* at 2023. In affirming this decision, the Supreme Court issued a plurality decision with four justices voting to affirm, four voting to reverse, and Justice Stevens providing the tie-breaking vote in favor of affirming. *See id.,* 128 S.Ct. 2020.

Speaking for the four-justice plurality, Justice Scalia found the term "proceeds" to be ambiguous as used in the federal money laundering statute, and held the rule of lenity mandated interpreting this term in favor of the defendants, and thus as meaning "profits" rather than "receipts," because proof of laundering the former was more onerous. *Id.* at 2022–31 (Scalia, J., plurality opinion). Speaking for the four dissenting justices, Justice Alito found that, fairly read against the backdrop of the legislative history of the federal money laundering statute, and in the context of similar state statutes, international treaties, and model acts pertaining to money laundering, the term "proceeds" was not ambiguous and meant "the total amount brought in," *i.e.,* gross receipts. *Id.* at 2035–45 (Alito, J., dissenting). In addition, Justice Alito noted that the federal money laundering statute had been enacted largely in response to the problem of criminals laundering drug trafficking proceeds, and believed the prosecutions it was intended to facilitate would be hampered by adoption of the plurality's circumscribed reading of the disputed term. *Id.* at 2039–44 (Alito, J., dissenting).

In his concurring opinion, Justice Stevens agreed that the term "proceeds" meant "profits" in the context of the money laundering statute where the underlying SUA was running an illegal gambling operation, but suggested that the meaning of this term could vary depending upon the underlying SUA. *Id.* at 2031–34 (Stevens, J., concurring). For instance, Justice Stevens agreed with the dissent's interpretation that "the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." *Id.* at 2032. Nonetheless, Justice Stevens noted this same legislative history provided no indication as to the meaning of the term "proceeds" for illegal gambling or other SUAs. *Id.* Accordingly, because he shared the plurality's concern that permitting the prosecution of money laundering based on transactions involving the receipt of gambling proceeds might overlap with the elements of illegal gambling but provide a harsher sentence under sentencing guidelines that were mandatory when the two defendants were sentenced, he concurred in the plurality's decision, writing:

> Faced with both a lack of legislative history speaking to the definition of "proceeds" when operating a gambling business is the "specified unlawful activity" and my conviction that Congress could not have intended the perverse result that would obtain in this case [i.e., the merger problem] under Justice Alito's opinion, the rule of lenity may weigh in the determination. And in that respect the plurality's opinion is surely persuasive. Accordingly, I concur in the judgment.

*Id.* at 2033–34 (Stevens, J., concurring) (alteration in brackets). The parties disagree about the holding of this decision.

■ "Ordinarily, where 'a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' " *United States v. Carrizales–Toledo*, 454 F.3d 1142, 1151 (10th Cir.2006) (quoting *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 [1997].) "In practice however, the *Marks* rule produces a determinate holding 'only when one opinion is a logical subset of the other, broader opinions.' " *Id.* (citation omitted). "When the plurality and concurring opinions take distinct approaches, and there is no 'narrowest opinion' representing the 'common denominator of the Court's reasoning,' then *Marks* becomes 'problematic.' " *Id.* (citations omitted). In such a situation, circuit courts generally hold that no national standard derives from the plurality decision, and the only binding aspect of the decision is its specific result. *See, e.g., United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir.2003) ("When it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of the majority of the Supreme Court."); *Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 170 (3rd Cir.1999) (same).

■ In the instant case, I find *Marks* inapplicable because Justice Steven's concurrence is not a "logical subset" of the plurality opinion. The plurality held the rule of lenity required the interpretation of "proceeds" to always mean "profits" under the of the federal money laundering statute, and explicitly rejected Justice Stevens's contention that the this term could have different meanings depending upon context. *See Santos*, 128 S.Ct. at 2030–31

(Scalia, J., plurality opinion). Moreover, despite the plurality's attempt to read Justice Stevens's concurrence as logically consonant with its holding on the narrower grounds "that 'proceeds' means 'profits' when there is no legislative history to the contrary," Justice Stevens himself rejected this contention, writing:

> [This interpretation] is not correct; my conclusion rests on my conviction that Congress could not have intended the perverse result that the dissent's rule would produce if its definition of "proceeds" were applied to the operation of an unlicensed gambling business. In other applications of the statute not involving such a perverse result, I would presume that the legislative history summarized by Justice Alito reflects the intent of the enacting Congress. Its decision to leave the term undefined is consistent with my view that "proceeds" need not be given the same definition when applied to each of the numerous [SUAs] that produce unclean money.

*Id.* at 2034 n. 7 (Stevens, J., concurring) (internal citations omitted). Because I find the plurality's finding that the term "proceeds" is ambiguous—and its conclusion that this term must be interpreted as always meaning "profits" under the rule of lenity—to be inconsistent with Justice Stevens's apparent finding that the term is both unambiguous and variable, and that it presumptively includes "receipts," except in those cases in which money laundering and the underlying SUAs share the same elements and thus lead to potentially disparate sentencing options, to be fundamentally irreconcilable, I find there is no "common denominator" in the Court's decision, and that the only binding aspect of this decision its specific result relating to the SUA of illegal gambling on the facts of the case. *Carrizales–Toledo,* 454 F.3d at 1151 (citation and quotation marks omitted); *see also Alcan Aluminum Corp.,* 315 F.3d

at 189; *Anker Energy Corp.,* 177 F.3d at 170. Accordingly, I reject Defendant Evaristo Orosco's contention that the Government's failure to adequately allege or proffer any indicia of proof that he laundered the profits as opposed to receipts of illegal drug trafficking requires dismissal of count four of the superseded indictment against him.

As a consequence of my above-holding, I also find that *Santos* left Tenth Circuit law pertaining to the proper interpretation of "proceeds" in the federal money laundering statute undisturbed at least when the underlying SUA is some act other than illegal gambling. Despite the Government's assertion that the Tenth Circuit has "adopted a 'gross receipts' definition of 'proceeds,'" I note it has failed to cite any law so demonstrating. (*See* Gov't's Resp. at 7.) Defendant Evaristo Orosco has similarly failed to cite any law to the contrary. (*See* E. Orosco Br.) My own research has revealed no Tenth Circuit cases on point. To the extent that this is a question of first impression in this circuit, I note Justice Alito's dissent is persuasive to this court, and moreover that five justices agreed in dicta "that the term 'proceeds' 'includes gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'" *Santos,* 128 S.Ct. at 2036 & n. 1 (Alito, J., dissenting); *see also id.* at 2023–24 (Stevens, J., concurring). Nonetheless, because I need not decide this issue to decide Defendant Evaristo Orosco's motion to dismiss on *Santos* grounds, I accordingly reserve judgment, and note that the parties may submit further briefing on this point in connection with their proffered jury instructions.

### 3. Conclusion

Based on the foregoing, it is therefore ORDERED that:

1. Defendant Beatriz Munoz–Carrillo's motion to join Defendant Evaristo Orosco's motion to dismiss count four of the superseding indictment (# 692) is GRANTED;

2. Defendant Evaristo Orosco's motion to dismiss count four of the superseding indictment (# 660) is DENIED as to him and all defendant joiners; and

3. Defendant Robert J. Clark's motion for leave to file a motion to dismiss count four of the superseding indictment (# 701) is DENIED as MOOT.