Beatriz MARRERO, Petitioner,

v.

UNITED STATES of America,
Respondent.

Case Nos.: 08–21092–CIV, 03–20450–CR.

United States District Court,
S.D. Florida.

Oct. 2, 2009.

Beatriz Marrero, pro se.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS OF MAGIS-TRATE JUDGE WHITE [DE 36]; DENYING MOTION [DE 1]; CLOSING CASE

ALAN S. GOLD, District Judge.

THIS CAUSE is before the Court upon Magistrate Judge White's Report and Recommendations [DE 36], entered April 16, 2009 (hereinafter, the "Report"). The Report recommends that Plaintiff's Motion to Vacate [DE 1] be denied. Objections to the Report have been timely filed on May 07, 2009 [DE 38].

Judge White properly addressed the four claims that Petitioner raised in her motion to vacate. First, Petitioner raised an ineffective counsel claim, which Judge White appropriately found without merit. Having applied the standard for ineffective counsel set forth in *Strickland v. Washington*, Judge White correctly concluded that Petitioner failed to demonstrate that her trial and appellate counsels were ineffective. [DE 38, p. 9–12].

Next, Petitioner claimed prosecutorial misconduct that denied her a fair trial. Notably, Petitioner raised this issue on appeal and the Eleventh Circuit found no evidence to suggest that the government suborned perjury. *United States v. Cardenas*, 234 Fed.Appx. 892, 902 (11th Cir.2007). We agree with the Eleventh Circuit's conclusion that Petitioner's claim is without merit.

■ In her third claim, Petitioner contended that the Supreme Court cases of *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) and *Cuellar v. United States*, 553 U.S. 550, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008) support the reversal of her convictions. Petitioner urged Judge White to adopt the *Santos*

plurality's position that "proceeds" mean profits. She argued that her failure to profit from the illegal venture with Diaz amounted to insufficient evidence to support her money laundering conviction. Although, the Eleventh Circuit has not interpreted the term "proceeds" as used in § 1956(a)(1)(A)(i), we need not address the meaning of the term "proceeds" for the sake of deciding the instant case.[1]

Interpreting "proceeds" in the narrowest sense would not change the outcome of this case. Petitioner's argument that she experienced financial losses from her illegal adventure with Diaz is not supported by the evidence put on at trial. The evidence at trial overwhelmingly indicated that Petitioner accepted the payment of a commission of 2 or 3% for the transportation of the money. [DE 38, p. 15]. Additionally, she received 2% for the exchange of smaller bills for larger bills, which she arranged through a friend at the bank, to facilitate the transfer of the funds. *Id.*

Moreover, Judge White extensively detailed the trial court's finding that Petitioner knowingly transported to Spain laundered funds from the proceeds of drug trafficking by Diaz's organization. Petitioner's knowledge of the source of the funds, her role in exchanging the smaller bills for larger bills, and her trips to Spain to transport the money without filing outbound currency reports satisfied the "concealment element" as required by § 1956(a)(2)(B)(i) and outlined in *Cuellar.*

Finally, Petitioner argued that her sentence was unreasonable and unlawful. This claim was procedurally barred from review because it was not raised on appeal. [DE 38, p. 17]. Even if we were to overlook the procedural bar, the validity of the claim is undermined by the record of Petitioner's sentencing hearing. The trial court denied the government request for a sentence enhancement for obstruction of justice and concluded that the "guidelines range of 121 to 151 months is too high in view of the offense." [DE 38, p. 8]. Further, the trial court determined that the appropriate guidelines imprisonment range for the offense was 97 to 121 months and subsequently sentenced Petitioner to the lowest end of the guideline range of 97 months imprisonment with three years of supervised release. [CR DE 831].

Because Petitioner did not provide any meritorious arguments in her objections to Judge White's Report and Recommendation and having reviewed the record and applicable law, it is hereby

ORDERED AND ADJUDGED:

1. The Report and Recommendations [DE 36] is AFFIRMED AND ADOPTED.

2. Plaintiff's Motion to Vacate [DE 1] is DENIED.

3. This case is CLOSED.

### *REPORT OF MAGISTRATE JUDGE*

PATRICK A. WHITE, United States Magistrate Judge.

Beatriz Marrero filed a *pro se* motion to vacate pursuant to 28 U.S.C. § 2255, attacking her conviction and sentence imposed following a jury trial in Case No. 03–20450–cr–Gold.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

For its consideration of the motion to vacate (Cv–DE# 1), and the movant's memorandum of law (DE#s 13 and 15), the Court reviewed the government's re-

---

1. *See Engle v. Eichenlaub,* 2009 WL 2634206 (N.D.Fla., Aug. 24, 2009) (Holding that the meaning of "proceeds" as adopted by the plurality in *Santos* is narrowly applicable to money laundering convictions based on the proceeds of illegal gambling.)

sponse to an order to show cause with multiple exhibits (Cv–DE# 23), supplemental response (DE# 35), the movants reply and the underlying criminal file. The movant's conviction and sentence were affirmed on June 12, 2007, by the Eleventh Circuit Court of Appeals *United States v. Cardenas,* 234 Fed.Appx. 892 (C.A.11 (Fla.)2007). This motion, filed on April 18, 2008, is timely filed.

Marrero raises the following ineffective assistance of counsel claims (Claim 1):

 a. Counsel was ineffective by failing to properly argue the evidence to the jury and articulate a proper closing argument or conduct a proper cross-examination of witnesses.

 b. Counsel failed to introduce the movant's bank statements and corporate tax records at trial to rebut the testimony of the government's cooperating witness Edward Diaz.

 c. Counsel failed to argue at sentencing that the movant should receive a safety valve reduction.

 d. Counsel failed to raise a *Booker* violation.[1]

 e. Appellate Counsel failed to allege prosecutorial misconduct.

 2. *Giglio*[2] and *Brady* violations denied the movant a fair trial.

 3. The Supreme Court cases of *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020 [170 L.Ed.2d 912] (2008) and *Cuellar v. United States,* 553 U.S. 550, 128 S.Ct. 1994 [170 L.Ed.2d 942] (2004) support a reversal of the movant's convictions.

 4. The movant's sentence was unreasonable and unlawful pursuant to *Booker.*

*Factual and Procedural History*

On June 27, 2003, Marrero was charged in an 85 Count superseding indictment relating to a conspiracy to possess with intent to distribute methylenedioxymethamphetamine (MDMA or Ecstasy) and the laundering of the proceeds from the importation, sale and distribution of Ecstasy. The movant was charged with Count 71, conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) and Counts 76–81 of money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) and (B). The movant was convicted of transporting funds from the United States to outside the United States, with the intent to promote drug trafficking activities, to conceal the nature of such property and to avoid transaction reporting requirements. She was further charged with two counts (Counts 82 and 83) of laundering monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The movant was convicted of all Counts with the exception of Count 81.

Defense Counsel filed a motion to suppress post arrest statements and a hearing was held on November 10, 2003, at which time Marrero testified on her own behalf. (Government Exhibit E) Counsel claimed that statements Marrero made to law enforcement agents following her arrest were made involuntarily and that she was not informed of her constitutional rights. She claimed that she was coerced into waiving her rights after she invoked her right to remain silent and her right to counsel, and that her waiver was not knowing or voluntary.[3] The government pro-

---

1. *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

2. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)

3. Facts taken from the Report and Recommendation following the suppression hearing by the Magistrate Judge. (Government Exhibit E)

vided the testimony of ICE Special Agents who were present at Marrero's arrest. Agent Regan testified that Marrero was interviewed, at which time she was shown a copy of her arrest warrant and advised that she was being indicted in connection with an Ecstasy smuggling ring, and charged specifically with money laundering. She was read the Statement of Rights and Waiver Form, which she signed, and agreed to talk to him. Regan testified that Marrero was not under the influence of drugs or alcohol, that she was articulate, and never asked for counsel. Marrero's statements related to her association with Edward Diaz, a cooperating co-defendant and alleged ringleader of the smuggling operation, and her part in the operation. Marrero admitted to delivering money to Spain for Diaz, and stated that Diaz had paid for her tickets. The Magistrate Judge denied the motion, finding that her testimony relating to the voluntariness of her statements conflicted with the testimony of the special agents and was not credible. The Report and Recommendation was adopted by the District Judge.

Defense counsel filed a second motion to suppress post arrest statements obtained in violation of the *Massiah* Doctrine (Undercover interrogation).[4] A hearing was held on January 15, 2004.[5] The Government disclosed information revealing that on or about the week of June 23, 2003, Diaz and Marrero were incarcerated in the Federal Detention Center, in close proximity to each other. A conversation ensued in which, in summary, Diaz informed Marrero that the federal agents knew everything about the MDMA organization and that the agents had found "the ledgers". He told Marrero that she should cooperate with the government. Marrero's responses were self-incriminating. The government argued that a *Massiah* violation had not occurred for the following reasons: Marrero had not invoked her right to counsel prior to her encounter with Diaz, the encounter was not deliberately arranged, and Diaz was not a government agent. The Magistrate Judge did not find Marrero's testimony credible. The Magistrate Judge further found that Diaz was not acting as a government agent and the conversation, if used as evidence at trial, would not infringe upon the movant's Sixth Amendment right to counsel. The motion was denied. (Government Exhibit E) The Report and Recommendation was adopted by the District Judge.

Diaz was arrested on July 20, 2001. Agents found 38, 966 Ecstasy pills, customized body suites with hidden pockets, a digital scale, along with U.S. and foreign passports, with multiple aliases. Also found was a drug ledger which contained various names, allowing Diaz to keep track of the people who traveled on his behalf, (DE# 607:71), airline records (DE# 596:34–46), and other notebooks containing entries for quantities and dates delivered. (DE# 596: 47–57) (DE# 607 100–102). Shortly after his arrest, Diaz began cooperating with the government and testified at the movant's trial. (DE# 600:35, DE# 607:193–194).

Marrero, and four co-defendants were tried to a Jury beginning on July 7, 2004. The facts as established at trial are as follows: Diaz testified he had possessed firearms, trafficked in cocaine and laundered the proceeds of his drug business. (DE# 605: 20–85).Diaz, who had pending federal charges lodged against him for drug violations was introduced to Ray Arias and they began conducting cocaine deals. Diaz claimed that he had attempted

---

4. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

5. The facts related to this hearing are taken from the Magistrate Judge's Report and Recommendation (Government Exhibit E).

to "go legit" by venturing into a cigarette company, but it failed.[6] Arias suggested the Ecstasy smuggling business. (DE# 607:33).Diaz purchased the pills in Spain, and Arias had them transported, to be sold in the United States. (DE# 607:37–38) Diaz would sell the drugs and launder the money by having other participants carry the cash back to Spain.

Diaz testified as to Marrero's involvement in the Ecstasy business. The name "Bee" for "Beatriz" was found on multiple notebooks and documents with telephone numbers matching Marrero's. (DE# 596:102–103, DE# 607:96–97). The notations in the notebooks for "Bee" contained dates and numbers. Diaz explained that he kept track of money delivered to Marrero, the dates delivered and the exchange rate. Diaz was introduced to Marrero, who ran an insurance agency, through Arias. (DE# 607:77, DE# 611:113). Arias met with Diaz and Marrero to discuss a loan to Diaz. Diaz stated she was "pretty informed concerning the Ecstasy business". (DE# 607:79–81) Marrero agreed to lend Diaz money, $100,000.00, without collateral or a promissory note. Diaz then proposed the movant take money to Spain for him. The movant made six trips to Spain, carrying cash to be delivered to Diaz's drug supplier, and received a percentage of the total amount of monies transported.[7] (DE# 607:84) Marrero also exchanged small bills for him into large denominations to facilitate the transfer of monies. No declarations were filed with respect to the transported money either leaving the U.S. or arriving in Spain. (DE# 596:127, # 607:85–89). When Diaz became concerned about the frequency of Marrero's travel to Spain, the movant recruited codefendant Rosa Sanchez, her business partner at the Insurance Agency as the courier. (DE# 607: 88, 91). Sanchez made two trips to Spain for Diaz, who paid for her tickets and commission through Marrero. (DE# 607:92) Marrero transported hundreds of thousand of dollars for Diaz (DE# 876:34–35), monies which came exclusively from the sale of Ecstasy (DE# 607:90), and used her insurance agency's business checking account in an attempt to legitimize the illegitimate cash proceeds of the organization.

Marrero testified at trial that she owned an Insurance Agency. (DE# 632: 63–68, 148–50). In August 2000 she was introduced to Diaz, who was using the name "Eduardo Gonzalez" by her friend Ray Arias, who had a prior drug felony conviction. Gonzalez claimed to be a businessman from Spain who was seeking to reclaim six containers of tobacco seized by Venezuelan Customs. Marrero agreed to assist Diaz and contacted her attorney to represent him, paying her fee. She denied loaning Diaz money and denied transporting money to Spain for him. (DE# 632:71–815). She claimed her trips to Spain had been to recover tobacco containers seized in Venezuela. Upon her return trips she met with Diaz, to brief him on the progress of the tobacco recovery. She loaned him about $16,000 as good faith towards money she would make from the tobacco recovery. The jury did not find her testimony credible, and the movant was found guilty of Counts 71, 76, 77–80, 82 and 83.

Defense counsel filed numerous post trial motions, including a motion to dismiss

---

6. Diaz suffered losses in the cigarette business when a load was seized by Customs for non payment of duties.

7. Airline records discovered by Agent Regan supported the fact that Marrero had traveled between Miami and Madrid in February, March, April, May and June of 2001. (DE# 596: 112–113, 116–120)

for prosecutorial misrepresentation of evidence and discovery violations. (DE# 689:755, Exhibit E). The motions were denied.

The Pre–Sentence Investigation Report indicates that the petitioner's base offense level for a 18 U.S.C. § 1956 offenses is 23. The total adjusted offense level was 30. Based on a total offense level of 30 and a criminal history category of I, the guidelines imprisonment range is 97 to 121 months with a possible term of supervised release of not more than three years. Defense Counsel filed multiple objections to the PSI, and a sentencing memorandum. (Exhibit F) The government filed its objections.

The District Court conducted two sentencing hearings in light of *Booker, supra.* (Exhibit G). The Court denied the government's request for an enhancement for obstruction of justice.[8] The movant's base offense level was set at 23. The District Court found her accountable for $888,000 (the total amount found by jury special verdict) adding four levels to her offense conduct. She received a 3 level increase because the Court found the evidence conclusive that she believed that the funds were the proceeds of drug activity. Her total offense level was 30 with a criminal history category of 1, and she was sentenced at the lowest end of the guideline range to 97 months imprisonment with three years of supervised release. (DE# 831).[9]

On Direct Appeal, the petitioner challenged the District Court's denial of her motion for a continuance and mistrial on the grounds that the government withheld evidence, and committed prosecutorial misconduct. The Court found no prosecutorial misconduct and affirmed the conviction and sentence. *United States v. Cardenas, supra.*

*Analysis and law*

■ There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. *Belford v. United States,* 975 F.2d 310 (7th Cir.1992).

■ However, a claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. *United States v. Breckenridge,* 93 F.3d 132 (4th Cir.1996). Attorney error does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which is discussed in further detail, *infra. Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■■ Marrero couches many of her issues as ineffective assistance of counsel to avoid any procedural bar. For Marrero to succeed on a claim of ineffective assistance of counsel, she must demonstrate that counsel's performance was deficient, and that there is a reasonable probability that, but for counsel's errors, the result would

---

8. The Court stated that while that while the government's argument was well taken, and in accord with the Court's own judgment on her credibility, the guidelines range of 121 to 151 months is too high in view of the offense. (Trans p 159–160)

9. The Court went on to consider all the factors required by § 3553; the petitioner's history and characteristics, her prior history, the need to provide just punishment and deterrence, and the disparity among defendants. (Trans p 160–161)

have been different, in other words that the petitioner was prejudiced as a result of counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Chandler v. United States,* 218 F.3d 1305 (11th Cir.2000) (*en banc*). The standard is the same for claims of ineffective assistance on appeal. *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11th Cir.1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. *Id.* at 697, 104 S.Ct. 2052; *Waters v. Thomas,* 46 F.3d 1506, 1510 (11th Cir.1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. *Glover v. United States,* 531 U.S. 198, 203–204, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).

▪▪▪ The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." *Hardwick v. Crosby,* 320 F.3d 1127, 1161 (11th Cir.2003), *citing Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir.2000) (en banc) (When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade" a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." *Van Poyck v. Florida Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir.), *cert. den'd,* 537 U.S. 812, 123 S.Ct. 70, 154 L.Ed.2d 13 (2002), *quoting, Strickland v. Washington, supra* at 690, 104 S.Ct. 2052. Review of counsel's conduct is to be highly deferential. *Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11th Cir.1994), and second-guessing of an attor-

ney's performance is not permitted. *White v. Singletary,* 972 F.2d 1218, 1220 (11th Cir.1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); *Atkins v. Singletary,* 965 F.2d 952, 958 (11th Cir.1992).

*Claim One*

Marrero raises multiple conclusory claims of ineffective assistance of counsel.

▪▪▪ In claims (a) and (b) Marrero essentially states that her trial attorney failed to properly conduct her trial. The petitioner states that counsel's defense was weak, and he was unsuccessful at impeaching Diaz's drug ledgers, which she claims are the only direct incriminating evidence against her in this case. She further states that counsel didn't properly cross examine witnesses, and failed to articulate a proper closing argument which should have exposed the deficiencies in the prosecution's case and the glaring inconsistencies of Diaz's testimony. MaReview of the record reveals that counsel mounted a vigorous defense. He filed multiple pre-trial motions to suppress incriminating statements made by Marrero to Agents and to Diaz. He filed objections to the PSI and a sentencing memorandum. He cross examined Diaz and attempted to impeach his testimony. In closing argument he referred to Diaz's lack of veracity multiple times. The fact that the jury found Diaz's testimony credible, and Marrero's testimony less than credible cannot be attributed to counsel's defense.

▪▪▪ Marrero further claims that counsel failed to introduce the movant's bank statements and corporate tax records at trial to rebut the testimony of Diaz, the government's cooperating witness. The movant's bank statements and ledgers would not have rebutted the testimony and actual evidence that Marrero received mo-

nies from Diaz as notated in his drug ledgers. Diaz was cross examined by counsel as to the drug ledgers. The jury found both his testimony and the ledgers credible. There is nothing that Marrero states that would have changed the outcome of this trial, and Marrero suffered no prejudice as a result of counsel's performance.

In claim (c) Marrero claims that counsel was ineffective for failing to argue at sentencing that she was entitled to a safety valve reduction. The movant was not entitled to the safety valve reduction. Under the "tell-all" provision of the safety valve, 18 U.S.C. § 3553(f)(5) and USSG 5C1.2(a)(5) each defendant has the affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct. *United States v. Johnson,* 375 F.3d 1300 (11th Cir.2004). The defendant bears the burden of proving the truthfulness of his proffer. *United States v. Milkintas,* 470 F.3d 1339, 1345 (11th Cir.2006). Marrero continued to deny her involvement in the money laundering conspiracy and testified falsely. Therefore, this claim is without merit.

In claim (d) Marrero alleges that counsel failed to raise a *Booker* violation. Marrero raises the underlying substantive claim that her sentence was unreasonable and unlawful pursuant to *Booker* as in claim 4. The discussion of Claim 4 concludes that this claim is without merit.(See Claim 4) Therefore counsel cannot be considered ineffective for failing to raise a non-meritorious *Booker* argument.

In claim (e) Marrero claims that appellate counsel failed to allege prosecutorial misconduct. This claim was raised on direct appeal and found to be without merit by the Eleventh Circuit Court of Appeals. This claim is therefore without merit.

Marrero fails to demonstrate that her trial and appellate counsel's performance was ineffective. *Strickland, supra.*

*Claim 2*

In the petitioner's second claim she alleges that *Giglio, supra* and *Brady, supra* violations denied her a fair trial.[10] Marrero is claiming prosecutorial misconduct in allowing the perjured testimony at trial of Edward Diaz concerning the withdrawal of almost $46,000 from the movant' s equity line.[11]

Marrero raised this issue in a post-trial motion to dismiss for prosecutorial misrepresentation of evidence and discovery violations. The District Court, in denying the motion, stated that "Marrero's testimony during her case was so contradicted by other lies that these issues was de minimus in terms of the jury's weighing her credibility". The Court further found the matter was isolated when compared to the overwhelming evidence of guilt again the movant.(Exhibit E).

This issue was affirmed on direct appeal. Marrero challenged the district court's denial of her motion for a continuance and mistrial because of prosecutorial misconduct. Marrero sought time to obtain the

---

**10.** To establish a *Brady* violation the movant must show that the prosecution suppressed evidence favorable or exculpatory to the defendant, that it was a material issue at trial, and had the evidence been disclosed to the defendant there is a reasonable probability that the outcome would have been different.

A successful *Giglio* challenge requires that the defendant establish that the prosecutor

"knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony and that the false hood was material." *Tompkins v. Moore,* 193 F.3d 1327 (11th Cir.1999)

**11.** This would be in direct contradiction of Marrero's claim that she did not have sufficient funds to lend Diaz money.

equity check referenced by the government during cross examination to impeach her testimony that she had lost all of her money and credit status and could not have made a loan to the purported head of a drug conspiracy. The Eleventh Circuit, in affirming the convictions, found no evidence of prosecutorial misconduct and specifically stated that

> In light of the overwhelming evidence against her, Marrero cannot demonstrate that the conduct prejudicially affected her substantial rights. *US v. Cardenas supra.*

Clearly, there is no evidence to suggest that the Government suborned perjury. Diaz was questioned in front of the jury as to his plea and was cross examined. The jury found his testimony credible as to Marrero's guilt. Further, Marrero testified at trial, and the jury found her testimony less than credible, as did the District Court Judge upon listening to her testimony at the suppression hearings and at trial. There was more than sufficient evidence at trail to convict Marrero and the issue the of the equity check was an isolated matter when compared to the overwhelming evidence of Marrero's guilt. This claim is without merit.

*Claim 3*

In claim three, the movant claims that the Supreme Court cases of *United States v. Santos, supra* and *Cuellar v. United States, supra* support a reversal of her convictions. As this is a case of first impression in the Eleventh Circuit the government was ordered to file a supplemental response, addressing these issues. The

Court has reviewed the response, and agrees with the government that the evidence demonstrated at trial was more than sufficient under both *Santos* and *Cuellar.* (DE# 35) [12]

In the *Santos* case, the issue was whether the term "proceeds" as used in the money laundering statutes, (in *Santos,* the illegal lottery operator's payments to his winners and runners using the receipts from his lottery operation), means profits or gross receipts. A fragmented Court, a four Justice plurality, concluded that the term "Proceeds" as used in § 1956(a)(1)(A)(i) (money laundering) referred to the profits and not the gross receipts of specified underlying activities. [13]

The general rule for ascertaining the holding in a case where there is no majority opinion is that the case may be interpreted on its narrowest grounds. *Marks v. US,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). If there is no narrowest grounds that represents the Court's holding, the only binding aspect of a splintered decision is its specific result. *United States v. Alcan Aluminum Corp.,* 315 F.3d 179 (2d Cir.2003).

The definition of proceeds in *Santos* must therefore be interpreted to mean profits only where the underlying transactions involve the operation of an illegal gambling business. In the case of an illegal drug operation *Santos* should not apply. *See United States v. Orosco,* 575 F.Supp.2d 1214 (D.Col.2008) (declining to apply *Santos* in drug cases). *Kenemore v.*

---

12. The government discussed the retroactivity of these cases pursuant to *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) finding that they could be applied retroactively and were timely, but that the movant's claims were barred because she failed to raise the issues on direct appeal and could not demonstrate cause or prejudice to excuse this failure, citing to *United States v. Frady,*

456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

13. Justice Stevens broke the tie-breaking vote and concurred, stating that proceeds may mean profits as applied to some specified unlawful activities and gross receipts as applied to others.

*United States*, 2008 WL 4965948 (E.D.Tex. 2008) (*Santos* only applies in money laundering prosecutions involving "illegal gambling operations").

Even if the term "profits" applied to Marrero's case, the evidence supporting her conviction was sufficient. The movant's argument that she made no profits from the illegal venture with Diaz and instead experienced a financial loss is not supported by the evidence at trial. Diaz testified that when he proposed the movant start taking money to Spain for him he would pay her a percentage of 2 or 3% for the transportation of the money. (CR DE# 607:83). The movant accepted this, and made money on each trip to Spain. She further received 2% for the exchange of smaller bills for larger bills, accomplished through a friend at the bank, to facilitate the transfer of the money. Further the evidence at trial overwhelming demonstrated that the movant knew that the proceeds she transported to Spain were funds laundered from illegal proceeds of the drug trafficking activities of the Diaz organization.

██ In *Cuellar*, the Supreme Court focused on the "designed to conceal element" of § 1956(a)(2)(B)(i) (holding that § 1956(a) requires proof that the purpose of the transportation is to conceal or disguise the nature, location, source and the ownership or control of the fund). The government must demonstrate that the defendant did more that just hide the money during the transport. *Id.* at 2005–2006.

██ The evidence at trial overwhelmingly satisfied the *Cuellar* standard. The Diaz organization imported MDMA from Spain, distributed the MDMA throughout the South Florida area and laundered the proceeds back to Spain to pay the MDMA suppliers. The movant assisted Diaz' organization by smuggling large amounts of cash to Spain, without declarations of the cash, exchanging small bills for larger ones to facilitate the transport of the cash overseas and using her insurance agency's business checking account in an attempt to legitimize the illegitimate cash proceeds of the organization. Diaz testified that the movant and co-defendant Sanchez traveled to Spain with narcotic proceeds, as documented by his drug ledgers and other related evidence. Records were introduced at trial to show that neither the movant nor Sanchez had filed outbound currency reports as required by law when they traveled to Spain with the money, confirming the inference that each were hiding the currency. Diaz further testified that no declarations were filed with respect to the cash that the movant or the couriers transported, either when leaving the United States or arriving in Spain "because that would create problems" (CR DE 607:89). "When you're moving money like that, no one declares it. You don't declare it. You put it on your body, you take it and you just fly with it" (DR DE# 607:90).

Other evidence, independent of Diaz's testimony, included the statements of the movant and Sanchez to Agent Regan claiming that their trips to Spain were necessary to take documents related to Diaz's tobacco business. Obviously the jury found it incredible that given the expense and time involved, and the fact that the documents were not delivered to Spain on all occasions, the movant's trips were unrelated to Diaz's drug organization. Further money supplied to Diaz as noted in his ledger and to Juan, the supplier of the drugs in Spain, coincided with the movant's trips.

The movant was aware of the drug trafficking activities of the organization and had knowledge that Diaz used multiple "mules" in Miami and Madrid to smuggle ecstasy to the United States and drug proceeds to Spain. The transportation of

the cash was designed to achieve concealment and avoid transaction reporting requirements. The jury concluded from the evidence at trial that the movant participated in financial transactions that were designed to conceal the source and/or ownership of funds that had been represented to her to be drug proceeds of Diaz's organization.

*Claim 4*

 In Marrero's final claim she alleges that her sentence was unreasonable and unlawful pursuant to *Booker, supra.* This claim was not raised on appeal and should therefore be barred from review. *Belford, supra.* The movant attempts to avoid the procedural bar by raising this claim above as ineffective assistance of counsel.

Even if this claim were not procedurally barred, it is clearly belied by the record of the movant's sentencing hearings( Exhibit G). The District Court continued the first sentencing hearing for parties to submit sentencing memorandum in lieu of *Booker* (October 29, 2004 Trans 64–67). The Court determined that the amount of money laundered was the amount found by the special verdict of the jury (Exhibit C) of $563,000. The court then determined that the money laundered by Sanchez of $325,000 was attributable to the movant because she participated jointly in the activity with Sanchez and assisted in designing and executing the conspiracy scheme. (April 15, 2005 Trans p 156–164). The movant was held responsible for the total of $888,000 of laundered funds. The Court specifically referenced *Booker* by stating:

I previously have addressed the issue associated with determination of certain of these matters by a preponderance of the evidence versus being bound by the jury findings. As I've indicated, it is my view under the Rodriguez decision of the Eleventh Circuit and other decisions that in post *Booker* sentencing, since the guidelines are no longer mandatory and

the Judge doesn't apply them in a mandatory way with any presumption and the like, that the judge may still undertake findings of fact by preponderance as it related to the nonmandatory guidelines and also as it relates to the sentencing factor. (Trans p. 158)

The court determined that the obstruction of justice enhancement would increase the movant's sentence to an unacceptable range and she was sentenced to concurrent terms of 97 months.

*Conclusion*

For the reasons stated in this Report, the government's responses, and the record, the movant has failed to demonstrate that her claims have merit, and counsel cannot be considered ineffective for failing to raise on appeal every non meritorious claim. *See; Matire v. Wainwright, supra.* Further, the movant has failed to demonstrate either cause nor prejudice resulting from either trial or appellate counsel's performance. *Strickland, supra.*

It is therefore recommended that this motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated this 15th day of March, 2009.