RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0365P (6th Cir.)
File Name: 00a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

RAMIRO CANTU, JR.,
    *Defendant-Appellant.*

Nos. 99-1088/1273

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 97-00028—David W. McKeague, District Judge.

Argued: August 3, 2000

Decided and Filed: October 12, 2000

Before: NELSON and NORRIS, Circuit Judges; MATIA[*],
Chief District Judge.

_____

**COUNSEL**

**ARGUED:** Elaine Mittleman, Falls Church, Virginia, for
Appellant. Timothy P. VerHey, UNITED STATES
ATTORNEY, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:** Elaine Mittleman, Falls Church, Virginia, for

_____

[*]The Honorable Paul R. Matia, Chief United States District Judge for
the Northern District of Ohio, sitting by designation.

1

Appellant.    Timothy P. VerHey, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

PAUL R. MATIA, Chief District Judge. Defendant Ramiro Cantu appeals his conviction on one count of being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)), on the ground that the district court improperly dismissed a seated juror and replaced him with an alternate. Because we find that the district judge acted within his authority under Rule 24(c) of the Federal Rules of Criminal Procedure, we shall affirm the defendant's conviction.

## I.

Juror No. 78[1] filled out the district court's standard juror information form, on which he answered "yes" to the following two questions: "Have you ever been convicted of a state or federal crime punishable by imprisonment for more than one year?" and "If yes, were your civil rights restored?" (J.A. at 130.) Because it is not the district court's practice to allow parties to view these information forms, neither attorney was aware of the juror's responses. During the course of the regular *voir dire*, Juror No. 78 failed to respond to the following inquiry by the Court:

Have any of you ever been involved in a criminal matter that concerned you . . .? This involvement could come about because you were a defendant in a case, . . . any of those types of roles where you had some contact with the system. (J.A. at 97.)

The following exchange also occurred during *voir dire*:

---

[1] This opinion will refer to the juror in question solely by number in order to protect his privacy.

THE COURT: Another issue that will come up in this case is the question of possession of firearms, and there are many of us who have firearms or hunt or something of that nature, and I just would like to know if anybody belongs to any organizations that relate to firearms use or hunting or things of that nature. Yes, sir.

JUROR 78:      I hunt.

MR. VERHEY [Assistant United States Attorney]:

All right. Deer season just got finished. Were you out deer hunting?

JUROR 78:      Yes.

MR. VERHEY:    Is there anything about the fact that you use a gun to hunt that would make you unwilling to follow a law that says that a convicted felon cannot have a firearm?

JUROR 78:      No.

MR. VERHEY:    No problem with that.

JUROR 78:      No.

(J.A. at 98.) On the basis of his responses during *voir dire*, Juror No. 78 was not challenged for cause or excused by peremptory challenge and was sworn in as a member of the jury.

After receiving preliminary instructions, the jury was excused for lunch. During the lunch break, Juror No. 78 contacted a court official and advised her that he had been convicted of a marijuana offense about 20 years previously but did not know whether it was a felony or a misdemeanor. Having admitted in court that he hunts, he was concerned that he might be guilty of the very crime with which the defendant was charged--being a felon in possession of a firearm.

The government requested the dismissal of the juror, to which the defendant objected. Thereupon the Court summoned Juror No. 78 into the courtroom for further questioning. The following discussion took place (J.A. at 60-68.):

THE COURT: Please be seated in the jury box [Juror No. 78].

The court has been advised by the court staff that you have indicated to the court staff that you failed to reveal that you had been previously convicted of a crime; is that correct?

JUROR 78: Yes, and all the questionnaires, I filled everything out there and I figured it was fine according to all the paperwork.

THE COURT: As I recall, the initial questionnaire that you get from the clerk's office on the computer form asks you if you've been convicted of a crime, correct?

JUROR 78: Correct.

THE COURT: What did you reveal on that form?

JUROR 78: That I had.

THE COURT: What did you say about the nature of the crime?

JUROR 78: That it was -- I believe it was for selling marijuana.

THE COURT: Do you remember whether it was a felony or a misdemeanor?

JUROR 78: I'm not sure.

THE COURT: Do you recall what sentence you received?

---

own situation might affect his ability to be fair and impartial. Rule 24 allows a trial court to take action to obviate the need to grant a new trial at a later stage of the proceedings[3] and thus furthers the goal of ensuring a fair trial and contributes to the efficient use of judicial resources. Defendant has failed to demonstrate any prejudice to him resulting from the substitution of the alternate juror.

Accordingly, the district court's judgment is affirmed.

---

[3]Defendants have been known to appeal their convictions when jurors were seated in violation of 28 U.S.C § 1865(b)(5). *See, e.g., United States v. Boney*, 68 F.3d 497, 498 (D.C. Cir. 1995).

Defendant further contends that the record in the district court fails to establish the excused juror's bias and therefore the district court committed error by replacing the juror. Defendant cites cases where a losing party was seeking a new trial on the ground that one of the jurors either deliberately or inadvertently failed to reveal information during *voir dire* that might have indicated bias. *See e.g., McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 78 L. Ed. 2d 663, 104 S. Ct. 845 (1984); *Zerka v. Green*, 49 F.3d 1181 (6th Cir. 1995). In those cases, reviewing courts have required proof of bias on the part of the juror in order to justify the granting of a new trial, and defendant contends that the government in the instant case did not succeed in showing bias in Juror No. 78.

Defendant's arguments miss the point. Section 1865 is not the sole source of a trial judge's authority to replace a juror, nor does this case involve a motion for a new trial after a verdict was rendered. The district court's action was authorized by Federal Rule of Criminal Procedure 24(c)(1), which provides that "[a]n alternate juror, in the order called, shall replace a juror who becomes or is found to be unable or disqualified to perform juror duties . . . ." This Court has previously held that "the substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." *U.S. v. Warren*, 973 F.2d 1304, 1308-09 (6th Cir. 1992).

Such a decision is reversible only for an abuse of discretion, and there was no abuse of discretion in this case. The record in this case shows that the district court had reasonable cause to replace Juror No. 78: the possibility that he might not even be qualified to be a juror due to the unclear status of his previous conviction[2] and the possibility that concern over his

---

[2]Contrary to defendant's contention, we do not read the record as indicating that the district court in fact found that Juror No. 78 had been convicted of a felony. Rather, the district court found that there was not enough information available to determine whether the juror had pleaded guilty to a felony or a misdemeanor.

JUROR 78:  It was 30 days in the county jail with work release.

THE COURT: Do you remember what the potential punishment was at the time you were sentenced?

JUROR 78:  From what I remember, I believe they said I was facing up to eight years.

THE COURT: Were you advised when you were sentenced in that matter whether you would be permitted to possess firearms after your conviction for that offense?

JUROR 78:  I don't believe so.

THE COURT:  Do I understand correctly that one of your concerns here this morning is that you have revealed that you have been hunting and therefore in possession of a firearm?

JUROR 78:  Yes.

THE COURT:  Have you had any discussion with respect to this situation with any other members of the jury?

JUROR 78:  No, sir.

THE COURT: The issue that the court needs to address, [Juror No. 78], is what effect this information has, if any, on your suitability to serve as a juror in this case. I want to start by saying, first of all, that we appreciate you calling this to the court staff's attention so that the court and the parties would be aware of that. You've done exactly the right thing.

Does the fact that you have previously been convicted of this offense, in your opinion, cause you any difficulty in being fair and impartial in this case?

JUROR 78:  I don't believe so.

THE COURT:  How long ago did this happen?

JUROR 78:  At least 18 years.  I was just out of high school.

THE COURT:  Did you plead guilty to this offense or were you convicted in a trial?

JUROR 78:  I believe we plea-bargained.  I had a court-appointed attorney, and they plea-bargained.

THE COURT:  Did you go before a judge and explain what you did and tell him that you were guilty?

JUROR 78:  Yes.

THE COURT:  Were you satisfied with the way the court system handled your matter?

JUROR 78:  Yes, I was.

THE COURT:  Were you satisfied with the way law enforcement handled your matter?

JUROR 78:  Yes, I was.

THE COURT:  Now, I don't know and it's not my role to advise you whether you are or are not entitled to possess a firearm for hunting or any other purpose in view of this particular conviction and when and where it occurred.  I simply don't know and I suspect that no one else in the courtroom knows with any absolute certainty either.

In light of this uncertainty, what effect does that question that you felt important to raise to the court staff have on your ability to be fair and impartial in this case?

JUROR 78:  Knowing what I knew about myself?

THE COURT:  What I understand you told the court staff is that you were concerned that you didn't reveal that you'd been convicted of this crime and that you didn't

After considering the in-court discussion and reviewing the juror information form filled out by Juror No. 78, the district court replaced Juror No. 78 with an alternate juror.  The district court indicated that it was "troubled by . . . the fact that neither party had this information when they were called upon to make challenges for cause and/or peremptory challenges, particularly where, as here, both sides had ample peremptory challenges left . . . ." (J.A. at 71.)

## II.

The sole issue raised by defendant in this appeal is whether the district court improperly replaced a juror after the jury had been sworn.  Defendant contends that the juror's answers to questions put to him did not establish that he was disqualified from serving as a juror pursuant to 28 U.S.C. § 1865.  That section provides as follows:

### § 1865.  Qualifications for jury service

(a)  The chief judge of the district, or such other district court judge as the plan may provide, on his initiative or upon recommendation of the clerk or jury commission, shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for  . . . jury service. . . .

(b)  In making such determination the chief judge of the district court, or such other district court judge as the plan may provide, shall deem any person qualified to serve on grand and petit juries in the district court unless he–

*    *    *

(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.

MS. KRAUSE:   I understand, [Juror No. 78].  We're not trying to put you on the spot here but we have to work through the situation.

And you told Mr. VerHey that you thought it would be fair if you were arrested tomorrow.  Did I understand that answer?

JUROR 78:  Yes.

MS. KRAUSE:   Okay.  Now, by you saying that you think it would be fair for you to be arrested, are you assuming, then, that because the government has lodged that type of charge against my client, that he must be guilty?

JUROR 78:  I'm not assuming that he is, no, because I don't know what his case is.

MS. KRAUSE:   So based on everything you've just told Mr. VerHey, the judge, and myself, you are still willing to keep an open mind about the facts of this particular case regardless of your personal situation.

JUROR 78:  Yes.

MS. KRAUSE:   Nothing further, Your Honor.

THE COURT:  All right. [Juror No. 78], thank you for explaining this to us.  Please return to the jury room, and again, I want to caution you, do not discuss this with any other members of the jury.  They may very well ask you why you were brought back into the courtroom while they were sitting in there, and simply tell them that I instructed you that you were required to say that it concerns something that is not a matter for their concern.  All right?

JUROR 78:  Thank you, sir.

THE COURT:  Thank you.

know whether it was or wasn't a felony and that you had -- you might have incriminated yourself when you said here in open court this morning that you had been in possession of a weapon because you are a hunter.  Did I understand that correctly?

JUROR 78:  Yes.  I was unsure because I filled everything out on all the paperwork and so I figured everything went through and everything was checked and it was fine, and that's what I wanted to be for sure that that's what had happened and everything was fine.

THE COURT:  I want you to assume the worst.  I want you to assume that the offense that you were convicted of was one that had a punishment of more than one year, and it sounds like it was, and I want you to also assume that because of that conviction you are not entitled to possess a firearm.  What effect does that situation, if this worst case assumption is true, have on your ability to be fair and impartial in this case? Will that affect your view in this case in any way?

JUROR 78:  I'm not exactly sure what that means but I know I would have to get rid of what I have and I wouldn't be allowed to have them, and I would have to get rid of what I had.

THE COURT:  Now, what effect does that possibility have on any decision that you might make as a juror in this case?  In other words --

JUROR 78:  No, sir.  That I was supposed to get rid of them and I didn't, I would be expected to be punished.

THE COURT:  Now, does that have any effect on how you would view the evidence in this case?  In other words, let me give you some examples.  One possibility might be that you don't think these gun laws are fair now that you find out that they might apply to you and therefore you don't think that we should have these types of gun laws and you might take that into account in your

deliberations. Another possibility is that you may feel some sort of sympathy towards the defendant if you find out that he has been convicted of an offense punishable by more than one year and if it looks to you from the evidence like he was in fact in possession of one or more of these firearms because you find yourself potentially in the same situation. Those are just two examples that I could give you.

JUROR 78:   I would want something to be effective with the gun laws where this is something I did when I was, you know, a teenager and I have changed my ways and want to be able to do this.

THE COURT:  Now, it's very possible that if these laws do apply to you, that there is a procedure that you could have followed and perhaps should have followed to get your right to possess a firearm restored. I don't know whether that's true and I don't know whether that's available to you or not, but that is a possibility. Would the fact that you would like to see these gun laws changed if they do apply to somebody in your situation cause you any difficulty in following my instructions to you as to the law even though you might not like the law or you may think it's unfair because of your situation?

JUROR 78:  I believe that would be fair, yes.

THE COURT:  What would be fair?

JUROR 78:  Where, like, I had, like, nonviolent crime, and if the law -- if it could change where I am positive that I can, you know, if I could go through something to -- for instance, I'm not supposed to and there was a process that I could go through to be able to, since I have changed, that's -- I believe that would be right.

THE COURT:  Let me ask the question a different way. Obviously, assuming that such a procedure is available, you haven't gone through it, correct?

JUROR 78:  No.

THE COURT:  Now, if I tell you what the law is and I instruct you that you have to apply that law in this case regardless of whether you think it's fair or not, do you think that you'd be able to do that in view of your personal situation?

JUROR 78:  Yes.

THE COURT:  Mr. VerHey, any questions you have?

MR. VERHEY:   [Juror No. 78], what if Agent Herrera, who is the Alcohol, Tobacco, and Firearms agent, were to follow up on your situation and come and arrest you tomorrow because you were in violation of this law? Would you think that was fair?

JUROR 78:  Yes.

MR. VERHEY:  You do?

JUROR 78:  Yes.

MR. VERHEY:  All right.  That's all I have, Your Honor.

THE COURT:  Ms. Krause, any questions you have?

MS. KRAUSE:   Yes, thank you, Your Honor.

I want to follow up on what the Assistant United States Attorney just asked you. You answered that you thought it would be fair if you were arrested tomorrow. Did I understand your answer correctly?

JUROR 78:  Yeah. If that was the case, yes. Where if I was in the wrong, with all the things I have sent through and filled out the questionnaires, I feel if there was a problem, that would have already been addressed, so that's why I'm assuming I'm in the right.