COLE, Chief Judge,
concurring in part and dissenting in part.
I agree with the majority opinion’s resolution of most claims. I disagree, however, and respectfully dissent with respect to a single issue: whether the district court improperly removed and replaced Juror 6, at the foreperson’s request, after nearly five hours of deadlocked deliberations. Because the record reflects a real possibility that the foreperson requested Juror 6’s removal due to her view of the sufficiency of the government’s evidence (i.e., because she was a “holdout” juror), • her removal was improper. Accordingly, I would vacate the defendants’ convictions and remand the matter for a new trial.
I. THE STANDARDS GOVERNING JUROR REMOVAL
The legitimacy of our criminal justice system depends, in large part, on the fairness of trials, the accuracy of verdicts, and the degree to which the system sensibly limits the power of government in relation to citizens accused of committing a crime. See Joshua Dressier & George C. Thomas III, Criminal Procedure: Principles, Policies, and Perspectives 51-61 (2d ed.2003). The Sixth Amendment to the United States Constitution underscores these values by requiring a unanimous jury verdict in federal criminal trials. See United States v. Ramos, 861 F.2d 461, 465 (6th Cir.1988) (citing Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972)). The Federal Rules of Criminal Procedure echo these concerns by providing that every defendant is presumed innocent unless and until a unanimous twelve-member jury returns a guilty verdict. See Fed.R.Crim.P. 23(b) (“A jury consists of 12 persons unless this rule provides otherwise.”); Fed.R.Crim.P. 31(a) (“The verdict must be unanimous.”). Typically, the same twelve jurors originally empaneled will deliberate and render a verdict. Nevertheless, the rules contemplate hiccups during trial and permit district courts to replace an empaneled juror with an alternate if the original juror becomes “unable” or “disqualified” from serving. Fed. R.Crim.P. 24(c).
Trial judges may remove a juror for a variety of reasons, including an obligation to appear in state court; difficulty concentrating due to a death in the juror’s family; holiday travel plans; taking a child to college; or attending college courses oneself. United States v. De Oleo, 697 F.3d 338, 342 (6th Cir.2012) (collecting cases). Similarly, a “lack of candor [during voir dire ] and a failure to abide by instructions” constitute valid grounds for removing a juror. United States v. Ebron, 683 F.3d 105, 128 (5th Cir.2012); United States v. Cantu, 229 F.3d 544, 549-50 (6th Cir.2000) (holding that removal was proper where juror failed to respond candidly during voir dire). Our court generally reviews the decision to replace a juror with an alternate for an' abuse of discretion. De Oleo, 697 F.3d at 342.
Trial judges may not, however, remove a juror during deliberations “if the request for discharge stems from doubts the juror harbors about the sufficiency of the evidence.” United States v. Brown, 823 F.2d 591, 596 (D.C.Cir.1987); see United States v. Hernandez, 862 F.2d 17, 23 (2d Cir.1988) (“That a juror may not be removed becáuse he or she disagrees with the other jurors as to the merits of a case requires no citation.”); United States v. Thomas, 116 F.3d 606, 621 (2d Cir.1997) (“[T]o remove a juror because he is unpersuaded by the Government’s case is to deny the defendant his right to a unanimous ver- *895 diet.”); see also United States v. Simpson, 191 F.3d 454, at *2-3 (6th Cir.1999) (unpublished opinion) (upholding a juror’s removal but specifically noting that the juror was dismissed due to health reasons and not because she may have harbored doubts about the government’s case). Permitting the removal of a juror due to her view of the case, would render the right to a unanimous jury verdict “illusory.” Brown, 823 F.2d at 596; cf. Ramos, 861 F.2d at 465 (citing Apodaca, 406 U.S. at 404, 92 S.Ct. 1628, in which five concurring or dissenting justices of the Supreme Court agreed that the Sixth Amendment requires a unanimous verdict in federal criminal cases).
In many cases, a trial judge can determine whether removal is warranted “without any inquiry into the juror’s thoughts on the merits of the case.” Thomas, 116 F.3d at 620-21 (collecting cases where the request for removal stemmed from a particular event, competing obligation, or relationship between the juror and the parties). In those cases, the request for removal will be clear on its face, and the judge may freely investigate the basis for removal without intruding into the secrecy of the deliberative process. Id. In rare instances, the request for removal will be equally clear but plainly improper — i.e., the request will stem solely from one juror’s status as a “holdout” from returning a guilty verdict. See Brown, 823 F.2d at 596. Here again, the judge may act upon the request without breaching the secrecy of deliberations: “the judge must either declare a mistrial or send the juror back to deliberations with instructions that the jury continue to attempt to reach agreement.” Id.
But what happens when the reasons underlying a request to remove a juror are unclear? What should trial courts do when confronted with a request that hints both at good cause ,for removal and a desire to replace a “holdout” juror? See, e.g., United States v. Kemp, 500 F.3d 257, 302 (3d Cir.2007); Brown, 823 F.2d at 596. Circuit courts are split on this issue.
On one hand, the District of Columbia and Second Circuits have placed a premium on the secrecy of jury deliberations by limiting the trial courts’ ability to inquire into allegations of jury bias, jury nullification, or a failure to follow the court’s instructions. See Brown, 823 F.2d at 596 (“[Ujnless the initial request for dismissal is transparent, the court will likely prove unable to establish conclusively the reasons underlying it. Given these circumstances, we must hold that if the record evidence discloses any possibility that the request to discharge stems from the juror’s view of the sufficiency of the government’s evidence, the court must deny the request.” (emphasis added)); Thomas, 116 F.3d at 622 (“We adopt the Brown rule as an appropriate limitation on a juror’s dismissal .... This evidentiary standard protects not only against the wrongful removal of jurors; it also serves to protect against overly intrusive judicial inquiries into the substance of the jury’s deliberations.”). Brown and Thomas thus focused more closely on the initial request for removal rather than on the trial judge’s ultimate determination as to whether removal was warranted. As the Second Circuit aptly recognized, this standard might “leave[] open the possibility that jurors will engage in irresponsible activity that will remain outside the court’s power to investigate,” but “[t]o open the door to the deliberation room any more widely and provide opportunities for broad-ranging judicial inquisitions into the thought processes of jurors would ... destroy the jury system itself.” Thomas, 116 F.3d at 622.
*896 On the other hand, several circuits have adopted the Brown rule (or slight variations of it) while permitting district courts to inquire more fully into the deliberative process to ferret out juror misconduct. See, e.g., Kemp, 500 F.3d at 304; United States v. Abbell, 271 F.3d 1286, 1302-04 (11th Cir.2001) (per curiam), rev’d on other grounds by Cuellar v. United States, 553 U.S. 550, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008). For example, in Kemp, the Third Circuit endorsed a variation of the Brown rule that provides, “if the record evidence discloses any reasonable possibility that the impetus for a juror’s dismissal stems from the juror’s views on the merits of the case, the court must not dismiss the juror.” 500 F.3d at 303 (quoting United States v. Symington, 195 F.3d 1080, 1087 (9th Cir.1999)). But there, the court permitted lengthy questioning of the individual jurors to determine if a particular juror engaged in misconduct during deliberations. Id. at 301-02 (holding that district courts may investigate allegations of juror misconduct after deliberations have begun when presented with “substantial evidence” of that misconduct); accord Abbell, 271 F.3d at 1302-04 (adopting a variation of the Brown rule but focusing on the evidence of misconduct that the district court discovered during its investigation).
Our circuit has not considered facts on all fours with the Brown, Thomas, Kemp, and Abbell line of cases. But I believe the better approach requires an abundance of caution — particularly where, as here, the request to remove a juror occurs against the backdrop of deadlocked jury deliberations. Accordingly, I would join the District of Columbia and Second Circuits in adopting the Brown rule, which provides that “if the record evidence discloses any possibility that the request to discharge stems from the juror’s view of the sufficiency of the evidence, the court must deny the request.”[1] Brown, 823 F.2d at 596.
II. REMOVING JUROR 6 WAS IMPROPER
The instant appeal involves a close call, even under the strict limitations from Brown. Nevertheless, a careful review of the record demonstrates that removal of Juror 6 was improper. The record shows that the jury was deadlocked after nearly five hours of deliberations; that the jury had already sent the judge one note stating, “we cannot reach a unanimous decision on either Defendant”; that in response, the judge issued a modified Allen charge, instructing the jury to continue their deliberations; and that only then, on the second day of deliberations, did the foreperson send the judge the following note, requesting to remove Juror 6:
Judge Nixon, one of the Jurors overheard a fellow Juror [Juror 6] commenting on having prior information about drug dealing that she did not reveal during Jury selection. I feel that this prior information could perhaps be influencing her ability to reach a fair decision and should have been made known during the selection process. Thus, can we consider removing this Juror and using one of the Alternates?
The foreperson’s note, when viewed in light of the deadlocked deliberations, implicates a core concern that the Brown and Thomas cases explicitly discussed — namely, the improper targeting of a “holdout” juror.
Consider a case where, for example, a strong majority of the jury favors conviction, but a small set of jurors — per *897 haps just one — disagrees. The group of jurors favoring conviction may well come to view the “holdout” or “holdouts” not only as unreasonable, but as unwilling to follow the court’s instructions on the law. The evidentiary standard that we endorse today ... serves to protect these holdouts from fellow jurors who have come to the conclusion that the holdouts are acting lawlessly.
Thomas, 116 F.3d at 622; see also Brown, 823 F.2d at 596. While Brown and Thomas dealt specifically with jury nullification, “[their] reasoning applies with equal force to claims of juror bias” or other alleged juror misconduct. See Kemp, 500 F.3d at 303.
Under these circumstances, it seems there is at least some possibility, perhaps even a reasonable possibility, that the request to remove Juror 6 stemmed from her status as a “holdout.” Not surprisingly, counsel for the defendants objected to her removal. Defense counsel specifically argued that, at that point in the proceedings, the jury was deadlocked, and that a court may not remove a juror solely to avoid a hung jury, citing Hernandez, 862 F.2d at 23.
Faced with these competing concerns, the district court conducted limited hearings under the teachings of Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), and interviewed the relevant jurors in the presence of counsel. Judge Nixon proceeded with care at the outset of each interview by reminding the jurors that he did not want to discuss the status of deliberations or the leanings of the jury. Rather, he only wanted to determine whether Juror 6 had in fact made statements diming deliberations that she should have divulged during voir dire.
The interviews began with the foreperson, who stated that she had not heard the statements in question; that she was merely serving as a liaison between other jurors and the judge. The foreperson did, however, volunteer “that the Juror that reported it to me indicated that it was prejudicing [Juror 6] against this trial.” (emphasis added). This comment, though unsolicited, speaks to Juror 6’s view of the case.
The judge then turned his attention to the two jurors who claimed to have heard the statements. The first juror described Juror 6’s comments as follows:
JUROR 7: I may be completely wrong. But it just seemed — when we were talking about certain things, when we were deliberating, she mentioned that she knew some people like that, what we were — as far as what — kind of like what’s involved in this type of case. That’s all she said.
The second juror who claimed to have overheard the relevant statements described them in more detail as follows:
THE COURT: I just want to ask you about a conversation you heard — perhaps overheard or perhaps addressed to you by [Juror 6] about something about drug dealing?
JUROR 8: If — -what I think you are referring to is she mentioned that she knew people that did drugs and knew people that trafficked in drugs. Is that what you’re asking?
THE COURT: Yes.
JUROR 8: Okay. Yes, I heard that as well.
So far, so good. But then, the district court’s questioning turned from whether Juror 6 made the comments in question (a permissible inquiry) to whether the comments were influencing her view of the case (an impermissible inquiry). The following exchange shows where the court crossed the line:
*898 THE COURT: Did she say anything about that [knowing people who used drugs] and how that inñuenced her one way or another ? If you don’t recall, that’s fine.
JUROR 8: Let me think about that for a little bit.
THE COURT: Did she indicate what that was — how she was thinking as a result of knowing that?
JUROR 8: She didn’t—
COUNSEL: I’m sorry. I didn’t hear the Court’s question.
THE COURT: I asked him, did she express a feeling because of what she had known?
JUROR 8: She mentioned at two different times that she knew people that used drugs and dealt drugs and that she’d seen it — one time she mentioned that she’d seen it being dealt, and another time she mentioned that she never actually saw the people dealing the drugs.

I don’t think she ever in the same conversation tied together that that is how she was influenced.

THE COURT: Okay.
JUROR 8: I think there are other factors that — and I don’t know if I can say something without you directly asking me.
(emphasis added).
In sum, the record evidence reveals the following: (1) a deadlocked jury; (2) a district court with knowledge of the jury’s inability to reach a unanimous verdict; (3) a group of three jurors, including the foreperson, actively requesting Juror 6’s removal due to doubts about her “ability to reach a fair decision”; (4) a statement to the judge indicating that Juror 6’s comments were “prejudicing her against this trial”; (5) questions from the judge to a complaining juror surrounding Juror 6 and how she was “influenced,” “thinking,” and “feeling” about the case; and (6) a statement from a complaining juror to the judge indicating that Juror 6 was indeed influenced in some manner, be it by her knowledge of people who used and dealt drugs or “other factors.” Faced with this evidence, the district court removed Juror 6 with little fanfare, stating only, “All right, I’m going to remove [her] from this Jury and replace her with [an alternate].”
Without questioning the district court’s credibility determinations, second-guessing whether the government’s questions during voir dire should have elicited a response, or suggesting that the court removed Juror 6 to avoid a hung jury — I believe the proceedings below still run afoul of the Brown rule. At bottom, the record discloses a real possibility that the foreperson’s request to remove Juror 6, which the government happily joined, stemmed from her view of the case.[2] See Brown, 823 F.2d at 596. While the record also reveals that Juror 6 may have lied during voir dire, the Brown rule focuses on the initial request .for removal rather than on the trial judge’s ultimate determination as to whether that removal is warranted. See id. Although the court initially tried to limit its investigation to what Juror 6 said during deliberations, the court’s questioning, coupled with the individual jurors’ responses (both solicited and unsolicited), improperly intruded into the secrecy of the jury’s deliberations. These are precisely the harms that Brown, Thomas, and their progeny warned of *899 when allegations of juror misconduct arise after deliberations begin. See Symington, 195 F.3d at 1087 (“[The Brown ] rule is attentive to the twin imperatives of preserving jury secrecy and safeguarding the defendant’s right to a unanimous verdict from an impartial jury.”). In sum, while there may indeed have been cause to remove Juror 6, the district court should not have done so because it is more important to preserve tlie secrecy of jury deliberations than to remove a single juror, even one who may have acted irresponsibly. See Thomas, 116 F.3d at 622 (“[t]o open the door to the deliberation room any more widely and provide opportunities for broad-ranging judicial inquisitions into the thought processes of jurors would ... destroy the jury system itself’).
I recognize the difficulty that this rule imposes upon district courts, and I have no doubt the court meant well when it attempted to investigate the allegations of juror bias in this case. See Thomas, 116 F.3d at 622 (“We recognize that this standard — buttressing the core principle of the secrecy of jury deliberations — leaves open the possibility that jurors will engage in irresponsible activity that will remain outside the court’s power to investigate. It is an imperfect rule, no doubt, but one fully consistent with our history and traditions.”). But we must not lose sight of the fundamental role that juries play in our criminal justice system. Secrecy and unanimity remain paramount to that role, and the Brown rule, “imperfect” though it may be, best protects both aims. Id. Therefore, I respectfully dissent.

. Several other circuits have adopted the Brown rule but have modified slightly the language employed. See, e.g., Kemp, 500 F.3d at 304; Symington, 195 F.3d at 1087 & n. 5.

. Though Judge Nixon could not have predicted what would happen after Juror 6’s removal, the fact that the newly comprised jury (which was required and instructed to begin deliberations anew) returned a guilty verdict just over an hour later reinforces the inference that Juror 6 was indeed the lone "holdout” from a unanimous verdict.